Citation Nr: 1220797 
Decision Date: 06/14/12 Archive Date: 06/22/12

DOCKET NO. 09-23 281 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUES

1. Entitlement to service connection for hypertension.

2. Entitlement to service connection for sinusitis.

3. Entitlement to service connection for a gynecological disorder, to include pelvic inflammatory disease (PID) with irregular bleeding.

4. Entitlement to service connection for a psychiatric disorder, including posttraumatic stress disorder (PTSD).

5. Entitlement to service connection for a gastrointestinal disorder, including gastroesophageal reflux disease (GERD), as secondary to a psychiatric disorder. 

6. Entitlement to service connection for cervical cancer.

7. Entitlement to service connection for urinary tract infections (UTIs).

8. Entitlement to service connection for a back disorder. 

REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESSES AT HEARING ON APPEAL

Veteran and her sister


ATTORNEY FOR THE BOARD

J. Connolly, Counsel


INTRODUCTION

The Veteran served on active duty from January 1985 to January 1993. 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2008 decision of the Denver, Colorado, Regional Office (RO) of the Department of Veterans Affairs (VA). In May 2012, the Veteran and her sister testified before the undersigned a Board video conference hearing from the RO. At the hearing, the Veteran's representative clarified that service connection for a gastrointestinal disorder was being claimed as secondary to a psychiatric disorder.

The issues of service connection for liver disease to include cirrhosis and service connection for alcoholism to include as secondary to a psychiatric disorder been raised by the record, but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over these issues and they are referred to the AOJ for appropriate action. 

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). 38 U.S.C.A. § 7107(a)(2) (West 2002 & Supp, 2011).

The issues of service connection for a psychiatric disorder, including PTSD; a gastrointestinal disorder as secondary to a psychiatric disorder; cervical cancer; UTIs; and a back disorder are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. Hypertension is attributable to service.

2. Sinusitis is attributable to service.

3. PID with irregular bleeding is attributable to service.


CONCLUSIONS OF LAW

1. Hypertension was incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1131 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.303, (2011). 

2. Sinusitis was incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1131 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.303, (2011). 

3. PID with irregular bleeding was incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1131 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.303, (2011). 



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

There has been a significant change in the law with the enactment of the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326. The Veteran's claims addressed in the decision portion of this Board decision are being granted. As such, any deficiencies with regard to VCAA are harmless and nonprejudicial.

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.304. 

In addition, hypertension will be presumed to have been incurred in or aggravated by service if it had become manifest to a degree of 10 percent or more within one year of a veteran's separation from service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996) (table); 38 C.F.R. § 3.303.

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. Barr v. Nicholson, 21 Vet. App. 303 (2007); see Savage v. Gober, 10 Vet. App. 488, 494-97 (1997); see also Clyburn v. West, 12 Vet. App. 296, 302 (1999). Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage, 10 Vet. App. at 495-96; see Hickson, 12 Vet. App. at 253 (lay evidence of in-service incurrence sufficient in some circumstances for purposes of establishing service connection); 38 C.F.R. § 3.303(b).

In relevant part, 38 U.S.C.A. § 1154(a) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006) ("[T]he Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence"). The Veteran is competent to report what the Veteran can observe and feel through the senses. See Layno v. Brown, 6 Vet. App. 465 (1994). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau. 

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Savage, 10 Vet. App. at 496 (citing Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991)). Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")). The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the Federal Circuit, citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a) (West 2002). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing when the Veteran has testified. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604(Fed. Cir. 1996).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Competent lay evidence may establish the presence of observable symptomatology and, in certain circumstances, it may provide a basis for establishing service connection. See Barr. Although claimants may be competent to provide the diagnoses of simple conditions, such as a broken leg, they are not competent to provide evidence on more complex medical questions beyond simple observations. Jandreau; see Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed. Cir. 2010) (recognizing that in some cases lay testimony "falls short" in proving an issue that requires expert medical knowledge); Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010) (concluding that a veteran's lay belief that his schizophrenia aggravated his diabetes and hypertension was not of sufficient weight to trigger the Secretary's duty to seek a medical opinion on the issue). Indeed, even if lay testimony is competent, should VA find it to be mistaken or lacking credibility, the Board may reject it as unpersuasive and, thus, not ultimately probative. Buchanan; see also Rucker v. Brown, 10 Vet. App. 67 (1997) and Layno (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")). The Board may find a lack of credibility in, for example, conflicting medical statements or witness biases. Buchanan at 1337. The lack of contemporaneous medical evidence is also relevant; however, the mere lack of such evidence may not constitute the sole basis for discrediting the lay evidence. Id. 


Hypertension

The service treatment records reflect that the Veteran was apparently being evaluated for hypertension in January 1993, prior to her discharge from service. Her morning sitting blood pressure readings on three consecutive days were 146/102, 121/90, 123/86, 122/86, 119/92, and 120/89. Post-service, the Veteran was diagnosed as having hypertension, most recently confirmed in a June 2011 VA examination. 

According to VA's Schedule for Rating Disabilities (Rating Schedule), the term hypertension means that the diastolic pressure is predominantly 90 or greater, and isolated systolic hypertension means that the systolic pressure is predominantly 160 or greater with a diastolic pressure of less than 90. In affording the Veteran all reasonable doubt, the Board finds that hypertension was initially manifest during service, as shown in January 1993 per the diastolic readings, and that current hypertension is attributable to service. Thus, service connection for hypertension is warranted. 



Sinusitis

The service treatment records reflect that the Veteran have a history of sinusitis on entrance examination in November 1984. However, clinical evaluation of the sinuses was normal and the examiner did not note a diagnosis of sinusitis. Thereafter, the Veteran was treated for sinusitis during service in September 1989 and February 1991. Post-service, the Veteran has continued to be treated for sinusitis. The diagnosis of chronic sinusitis was most recently noted in June 2011 medical records of Memorial Health System. 

In this case, the Veteran is fully competent to attest to her observations of sinus symptoms, to include attesting as to symptoms in service, and as to a continuity of symptoms after discharge. Layno; 38 C.F.R. § 3.159(a)(2). The Board finds probative the competent evidence of pertinent sinus symptoms in service, including as shown in contemporaneous service treatment records and as diagnosed as sinusitis, as well as the Veteran's competent report of a continuity of such sinus symptoms since service that she presented at her hearing, and the continued diagnosis of sinusitis (noted to be chronic) on current medical records. The Board finds that the competent lay statements of the Veteran as to symptoms that supported the diagnoses of sinusitis by medical professionals provide competent and sufficient evidence to establish an etiology linked to service. See Davidson; Jandreau. Thus, on weighing and assessing all of the evidence on file, and resolving all reasonable doubt in the Veteran's favor, the Board finds that service connection for sinusitis is warranted. 


PID with Irregular Bleeding

The Veteran was treated on multiple occasions during service for vaginal bleeding including irregular bleeding, including in June 1985 and November 1986. In September 1987, it was noted that she had a probable ovarian cyst, cervicitis, and irregular menses. In March 1987 and January 1988, she was also treated for chlamydia. In September 1987, cytology showed inflammatory atypia. In May 1991, the Veteran was diagnosed as having secondary infertility, possible ovulation problem. Menorrhagia was diagnosed in September 1991, and dysmenorrhea was diagnosed in March 1992. 

Post-service, the Veteran was extensively treated in 1997 for PID, which was noted to have an onset of five years prior to that time. Her PID was noted to be recurrent in nature. She also was diagnosed as having tubo-ovarian abscess, bilateral. She underwent a right salpingo-oophorectomy.

The Veteran is certainly competent to report having had abnormal bleeding and abdominal pain since service. Her sister also testified to her observations of these problems. The medical records tend to corroborate these reports, showing repeated inservice reports of gynecological problems. Given the numerous in-service treatment for gynecological problems, the continued complaints since service, and the diagnosis of PID based upon these complaints just four years after service, the Board resolves doubt in the Veteran's favor and finds that service connection for PID with irregular bleeding is warranted. 


ORDER

Service connection for hypertension is granted.

Service connection for sinusitis is granted.

Service connection for PID with irregular bleeding is granted.


REMAND

Unfortunately, a remand is required in this case. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's claims so that she is afforded every possible consideration.

PTSD

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with §4.125(a) of this chapter; a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. See 38 C.F.R. § 3.304(f). 

The Veteran contends that she was raped by a fellow service member during service. She reports that they had consumed alcohol at a social gathering establishment and then went back to this person's room. He then assaulted her and made a videotape of the incident. Thereafter, he showed the video tape to other service members. She states that she did not report it at the time because she was being reassigned from her tour of duty in Germany, so she was leaving that environment. In a letter, D.J. indicated that she was dating the man that raped the Veteran. She stated that she knew of the tape and confronted the Veteran one evening during service to ask her about it. She related that the Veteran told her of the rape and looked pained and upset. 

In addition, the Veteran eventually told her sister. Her sister testified that she told the Veteran to report the incident, but the Veteran just wanted to put it behind her. The Veteran indicates that she finally received treatment when she went to the Vet Center after service. 

Her therapist from the Vet Center has submitted a letter which states that the Veteran has PTSD due to military sexual trauma which occurred on active duty. However, the actual treatment records from the Vet Center have not been obtained. This should be accomplished on remand.

A recent June 2011 VA examination did not diagnose PTSD. Instead, the examiner diagnosed a depressive disorder and an anxiety disorder. However, the examiner did not provide an opinion as to whether either of these disorders was related to the Veteran's service. Thus, remand for a medical opinion is required.

The Veteran's recent VA treatment record and records from the Social Security Administration (SSA) should also be obtained.

Gastrointestinal Disorder, UTIs, Back Disorder, and Cervical Cancer

The Veteran claims that her gastrointestinal disorder is due to a psychiatric disorder. On remand, she should be provided a VCAA letter on the matter of secondary service connection. See 38 C.F.R. § 3.310.

The Veteran also asserts she has a back disorder, cervical cancer, and UTIs which began during military service. The service treatment records reflect that the Veteran was treated during service for back pain in June 1986, April 1987, and June 1991. However, although a recent June 2011 examination diagnosed the Veteran as having lumbosacral strain, a medical opinion regarding whether it was related to service was not provided and the Veteran indicated that her back problems began after service to the examiner. 

With regard to cervical cancer, while it does not appear that the treatment records reflect this diagnosis, a medical professional has not made an assessment in that regard. 

Further, the Veteran had a UTI during service in September 1987 and after service in May 2000, she reported no current symptoms and it is unclear if the Veteran has a chronic disease and if there is an etiological connection between the incidents. 

In addition, since the claim is being remanded, all available records Penrose Community Hospital and Memorial Hospital records should be obtained as the Veteran reported having recent treatment by these providers.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). Expedited handling is requested.)

1. Notify the Veteran about (1) the information and evidence not of record that is necessary to substantiate a claim for service connection for a gastrointestinal disorder as secondary to a psychiatric disorder (see 38 C.F.R. § 3.310); (2) the information and evidence that VA will seek to obtain on her behalf; and (3) the information or evidence that she is expected to provide. A copy of this notification must be associated with the claims folder.

 2. Make arrangements to obtain the Veteran's complete treatment records from Penrose Community Hospital and Memorial Hospital, dated since 1993. 

3. Make arrangements to obtain any recent VA treatment records of the Veteran.

4. Make arrangements to obtain copies of all documents and/or evidentiary material from SSA pertaining to the Veteran's application for Supplemental Security Income (SSI), decided in August 2009. 

5. Make arrangements to obtain copies of the Veteran's complete treatment records from the Colorado Springs Vet Center, dated since December 2007. 

6. Thereafter, schedule the Veteran for appropriate VA examinations. If the not Veteran is not able to report for the examination(s), medical opinions should be obtained based upon review of the claims folders. The examiner(s) should review the claims folder in conjunction with the examination/opinion. 

Gynecological

The examiner should identify any current residuals of cervical cancer. If the Veteran is shown to have cervical cancer or residuals thereof, the examiner should provide an opinion as to whether it is at least as likely as not (50% or greater probability) that it had its clinical onset during active service or is related to any in-service disease, event, or injury. In providing this opinion, the examiner should acknowledge and discuss the Veteran's in-service treatment for gynecological problems.

Genitourinary

The examiner should identify any current residuals of a urinary tract infection. If the Veteran is shown to have a urinary tract infection or residuals thereof, the examiner should provide an opinion as to whether it is at least as likely as not (50% or greater probability) that it had its clinical onset during active service or is related to any in-service disease, event, or injury. In providing this opinion, the examiner should acknowledge and discuss the Veteran's in-service treatment for a UTI in September 1987.

Orthopedic 

The examiner should identify all current back disorders found to be present, i.e., lumbosacral strain, etc. The examiner should provide an opinion as to whether it is at least as likely as not (50% or greater probability) that any current back disorder had its clinical onset during active service or is related to any in-service disease, event, or injury. In providing this opinion, the examiner should acknowledge and discuss the Veteran's in-service treatment for her back in June 1986, April 1987, and June 1991.

Psychiatric

The examiner is asked to make the following determinations:

(a) Provide a diagnosis of any disorder found to be present, explicitly conforming to the DSM-IV.

(b) If PTSD is diagnosed, determine whether there is a link between the current PTSD and the in-service sexual assault. 

(c) If the examination results in psychiatric diagnoses other than PTSD (e.g., depression, anxiety, etc.), the examiner should provide an opinion as to whether it is at least as likely as not (50% or greater probability) that any psychiatric disorder had its clinical onset during active service or is related to any in-service disease, event, or injury, to include the in-service sexual assault. 

(d) If the Veteran has a psychiatric disorder related to service, the examiner should also provide an opinion as to whether it is at least as likely as not (50% or greater probability) that any current gastrointestinal disorder (i.e., GERD, ulcer, etc.) was either (i) caused by, or (ii) aggravated by the psychiatric disorder.

Any opinions expressed by the examiners must be accompanied by a complete rationale.

 7. Next, review the medical opinions obtained above to ensure that the remand directives have been accomplished. If all questions posed are not answered or sufficiently answered, return the case to the examiner(s) for completion of the inquiry. 

8. Finally, readjudicate the claims on appeal in light of all of the evidence of record, to include consideration of records contained in Virtual VA. If any issue remains denied, the Veteran should be provided with a supplemental statement of the case and afforded a reasonable period of time within which to respond thereto. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West2002 & Supp. 2011).



______________________________________________
P. M. DILORENZO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs