Citation Nr: 1452677 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 09-31 520 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUE

Entitlement to service connection for cause of the Veteran's death.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

J. Abrams, Associate Counsel




INTRODUCTION

The Veteran served on active duty from April 1943 to November 1945. He had subsequent reserve service from July 1949 to February 1969. He died in July 1999. The Appellant is his surviving spouse.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a November 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit Michigan.

This case was previously before the Board in January 2010 and June 2014 when it was remanded for additional development. For the reasons discussed below, the Board finds that there has been substantial compliance with its prior remand directives. See Stegall v. West, 11. Vet. App. 268 (1998).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2014). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The Veteran's death certificate states that he died in July 1999 as result of cardiac arrhythmia as the immediate cause of death. This was due to, or as a consequence of, coronary artery disease (CAD) as a significant condition contributing to death. Congestive heart failure was another significant condition contributing to death but did not result in the underlying cause.

2. The Veteran's cardiac arrhythmia with CAD was not incurred in or related to active service.


CONCLUSION OF LAW

The criteria for service connection for the cause the Veteran's death have not been met. 38 U.S.C.A. §§ 1110, 1310, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.310, 3.312 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

In deciding claims, it is the Board's responsibility to evaluate the entire record on appeal. See 38 U.S.C.A. § 7104(a) (West 2002). Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, certainly not in exhaustive detail, each and every piece of evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (noting that the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

I. The Duties to Notify and Assist

As provided by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist a claimant in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

The U.S. Supreme Court has made clear that VCAA notice errors, even when shown to have occurred, are not presumptively prejudicial, rather, must be judged on a case-by-case basis. Moreover, as the pleading party attacking the agency's decision, the Veteran or Appellant has this burden of proof of not only establishing error, but also, above and beyond that, showing how it is unduly prejudicial, meaning outcome determinative of the claim. Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

In the context of a claim for service connection for the cause of a Veteran's death, the VCAA requires notice to include a statement of the conditions (if any) for which the Veteran was service-connected at the time of his or her death; an explanation of the evidence and information required to substantiate a claim based on a previously service-connected condition; and, an explanation of the evidence and information required to substantiate a claim based on a condition not yet service connected. Hupp v. Nicholson, 21 Vet. App. 342, 352-53 (2007). Notice complying with these requirements was provided to the Appellant in November 2006 and March 2009 Duty to Assist letters.

The Appellant has not alleged that there was any defect in the content or timing of notice to her. No defect in the content or timing of notice is apparent from the record. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (noting that prejudice due to defective notice is not automatically assumed, but must be established in individual case). VA's duty to notify has been satisfied, and appellate review may proceed.

VA also has a duty to assist the Appellant in the development of her claim. This duty includes assisting the Appellant in the procurement of the Veteran's service treatment records (STRs) and pertinent post-service treatment records (VA and private), and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2002); 38 C.F.R. § 3.159 (2014).

The claims file contains VA medical evidence, private medical evidence, and the Appellant's contentions. The Board notes that in a March 2009 memorandum, there was a formal finding on the unavailability of the Veteran's STRs. In a June 2014 remand, the Board ordered the AOJ to obtain all private treatment records from the Veteran's physician, Dr. A. O. In a July 2014 Duty to Assist letter, the Appellant was asked to complete and return a VA Form 21-4142, Authorization and Consent to Release Information. The Appellant never completed the form. See Hayes v. Brown, 5 Vet. App. 60, 68 (1993) (noting that VA's duty to assist is not a one-way street; if a veteran or appellant wishes help, he/she cannot passively wait for it in those circumstances where his/her own actions are essential in obtaining the putative evidence). All available evidence, personnel, and administrative records were associated with the claims file prior to the Veteran's death. 

In September 2014, an expert medical opinion from a Compensation and Pension (C&P) examiner was obtained. The Appellant was provided a copy of the decision and an opportunity to respond. The Appellant has not identified any additional pertinent evidence that remains outstanding.

In light of the foregoing, the Board is satisfied that all relevant facts have been adequately developed to the extent possible; no further assistance to the Appellant in developing the facts is required to comply with the duty to assist. 38 U.S.C.A. 
§§ 5103, 5103A (West 2002); 38 C.F.R. § 3.159 (2014).

II. Stegall Analysis

As previously noted, the Board remanded this case for further development in January 2010 and June 2014. The Board specifically instructed the AOJ to obtain all private treatment records related to the Veteran's treatment for a heart disorder, specifically to include private treatment records from Dr. A. O., obtain an opinion from a VA physician to determine if the Veteran's cardiac arrhythmia with CAD was etiologically related to his active service, and to readjudicate the claim on appeal. 

Subsequently, a July 2014 Duty to Assist letter was sent to the Appellant, requesting that she complete and return a VA Form 21-4142, Authorization and Consent to Release information, from Dr. A. O., and any other private health care provider, but there was no response. See Hayes v. Brown, 5 Vet. App. 60, 68 (1993) (noting that VA's duty to assist is not a one-way street; if a claimant wishes help, he/she cannot passively wait for it in those circumstances where his/her own actions are essential in obtaining the putative evidence). Additionally, in September 2014, a VA physician provided an opinion as to the etiology of the Veteran's cardiac arrhythmia with CAD. Thereafter, the Veteran's claim was readjudicated in an October 2014 supplemental statement of the case. Thus, there is compliance with the Board's remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (noting that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).

IV. Legal Criteria

Cause of Death

The death of a Veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. The issue involved will be determined by exercise of sound judgment, without recourse to speculation, and after a careful analysis has been made of all the facts and circumstances surrounding the death of the Veteran, including, particularly, autopsy reports. 38 C.F.R. § 3.312(a) (2014).

The service-connected disability will be considered as the principal (primary) cause of death when such disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto. 38 C.F.R. § 3.312(b) (2014). A contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death; and that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. 
§ 3.312(c)(1) (2014). 

Generally, minor service-connected disabilities, particularly those of a static nature or not materially affecting a vital organ, would not be held to have contributed to death primarily due to unrelated disability. In the same category there would be included service-connected disease or injuries of any evaluation (even though evaluated as 100 percent disabling) but of a quiescent or static nature involving muscular or skeletal functions and not materially affecting other vital body functions. 38 C.F.R. § 3.312(c)(2) (2014).

Therefore, service connection for the cause of a Veteran's death may be demonstrated by showing that the Veteran's death was caused by a disability for which service connection had been established at the time of death or for which service connection should have been established. Service connection means that the facts, shown by the evidence, establish that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated during service. 38 U.S.C.A. §§ 1110, 1131(West 2002); 38 C.F.R. § 3.303(a) (2014).

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active military, naval or air service. 38 U.S.C.A. 
§ 1110 (West 2002); 38 C.F.R. § 3.303(a) (2014). Service connection may be granted for any disease diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in active service. 38 C.F.R. § 3.303(d) (2014).

Establishing service connection generally requires medical evidence or, in certain circumstances, lay evidence of the following: (1) A current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) nexus between the claimed in-service disease and the present disability. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009).

Certain chronic disabilities are presumed to have been incurred in or aggravated by service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1112, 1113, 1137 (West 2002); 38 C.F.R. §§ 3.307, 3.309(a) (2014). 

Additionally, claims for certain chronic diseases - namely those listed in 38 C.F.R. 
§ 3.309(a) - benefit from a somewhat more relaxed evidentiary standard under 38 C.F.R. § 3.303(b) (2014). A recent decision of the U. S. Court of Appeals for the Federal Circuit (Federal Circuit Court), clarified that this notion of continuity of symptomatology since service under 38 C.F.R. § 3.303(b), which as mentioned is an alternative means of establishing the required nexus or linkage between current disability and service, only applies to conditions identified as chronic under 38 C.F.R. § 3.309(a) (2014). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Lay Statements

In its determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (noting that a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77.
The Board must assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). In Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the Federal Circuit, citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a) (West 2002). Moreover, the Court has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996).

V. Analysis

The Appellant asserts that service connection for the cause of the Veteran's death is warranted. She specifically contends that the Veteran should be service-connected for CAD, which ultimately led to his July 1999 death from cardiac arrhythmia caused by CAD.

At the time of his death in July 1999, the Veteran had a current disability. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). In a January 1969 private treatment report, the physician noted that the Veteran's CAD was probably secondary to hypertensive disease. 
There are no records or STRs from the Veteran's active service. The Board notes that according to a March 2009 memorandum, the Veteran's STRs are unavailable for review and were presumed to have been destroyed in a 1973 fire. According to the Veteran's DD Form 214, he served from April 1943 to November 1945. He subsequently was in the Air Force Reserve from July 1949 to February 1969.

Even if a disease, injury, or event occurred in service, the Veteran fails to satisfy the third threshold element for service connection, a nexus between the claimed in-service disease, injury, or event and the present disability. Id. In a January 2007 letter, the Veteran's physician, Dr. A. O., wrote that the Veteran died from severe heart failure. Dr. A. O. wrote that the Veteran served in the US Air Force during World War II carrying out several dangerous missions successfully and that the stress of these missions could have contributed to the Veteran's hypertension and heart disease. Aside from stating what conditions the Veteran was diagnosed with at the time of his death, it is not altogether clear what the private physician's rationale was for this opinion, rendering it of diminished probative value. Inadequate medical opinions include opinions that contain only data and conclusions, do not provide an etiological opinion, are not based upon a review of medical records, or provide unsupported conclusions. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). Additionally, the Board notes that the Court has held in prior cases that medical opinions expressed in speculative language would not establish a plausible claim. 38 C.F.R. § 4.16(a); See Obert v. Brown, 5 Vet. App. 30, 33 (1993); See also Tirpak v. Derwinski, 2 Vet. App. 609, 611 (1992).

In a July 2010 C&P Opinion report, the physician opined that the Veteran's cardiac arrhythmia with CAD was not caused by or as a result of military service. The rationale given was that the Veteran died when he was 80 years old, 54 years after his discharge from military service. The VA physician noted that the fact that the Veteran was flying missions in World War II gave credibility to the fact that he was in good enough health to pass his flight examination. The VA physician wrote that CAD was a normal part of the aging process. However, the VA physician noted that the Veteran died in 1990, instead of 1999. Additionally, the physician apparently confused the Veteran's active service with his reserve service, writing that the Veteran's private physician treated him in January 1969, four years after he was discharged from active military service. Because the VA physician relied on inaccurate facts, the Board finds this opinion to be inadequate. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

In a September 2014 C&P Opinion report, the VA physician opined that the condition claimed was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The physician's rationale was that there was no medical nexus establishing causality between the Veteran's cardiac arrhythmia with CAD and his military service. The Veteran died at the age of 80, approximately 54 years after discharge from active service. His private physician treated him in 1969, 24 years after discharge from active service. While the Veteran had reserve service from July 1949 to February 1969, the Board notes that he had no active duty points after June 1963 or inactive duty points after June 1968. 

Additionally, the VA physician noted that the Veteran's private physician's medical opinion was written in January 2007, 48 years after the Veteran was discharged from active service, and eight years after the Veteran died. The Veteran's DD Form 214 did not list that he was medically discharged. He completed his term of active service. Additionally, he served in the Air Force Reserve for nearly 20 years after active service. As the VA physician wrote, "the fact that the Veteran was flying missions in World War II give credibility to the fact that he was in good health to be able to pass the flight exam[ination]. Coronary artery disease is a normal part of the aging process." 

The Board finds the September 2014 C&P Opinion report to be factually accurate, fully articulated, and based on sound reasoning. A medical opinion that is factually accurate, fully articulated, and based on sound reasoning carries significant weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008); see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). The statements made by the Veteran's private medical examiner, while competent and credible, are less probative than the September 2014 VA examiner's.

The Board has not overlooked the Appellant's statements with regard to her husband's CAD. The Appellant is competent to report on factual matters of which she had firsthand knowledge, including observing symptoms. See Layno v. Brown, 6 Vet. App. 465 (1994). However, as a lay person, the Appellant is not competent to offer an opinion regarding the etiology of the Veteran's CAD because there is no evidence that she has medical training. The question of causation involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship. As such, the question of etiology in this case may not be competently addressed by lay evidence, and the Appellant's own opinion is not probative. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (noting that although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005).

Based on the above analysis, the Board concludes that the weight of the competent, credible, and probative medical and lay evidence is against the claim, and service connection for CAD is not warranted on a direct basis. Additionally, the first mention that the Veteran had CAD was in January 1969, over 24 years after his discharge from active service. The Board notes that the passage of time between the Veteran's discharge and an initial diagnosis for the claimed disorder is one factor that weighs against the Veteran's claim. Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (lengthy period of absence of medical complaints for condition can be considered as a factor in resolving claim, just not the only or sole factor); see also Mense v. Derwinski, 1 Vet. App. 354, 356 (1991) (affirming Board's denial of service connection where the Veteran had failed to account for lengthy time period between service and initial symptoms of disability). As there is no evidence showing that the Veteran developed CAD within one year of discharge from active service, service connection on a presumptive basis is also not warranted.

As the Veteran is not service connected for any disability, the preponderance of the evidence is against entitlement to service connection for cause of the Veteran's death. As the preponderance of the evidence is against the claim, the benefit of the doubt doctrine does not apply. 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102 (2014).


ORDER

Entitlement to service connection for cause of the Veteran's death is denied.




____________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs