Citation Nr: 1508829 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 08-05 146 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Cleveland, Ohio


THE ISSUES

1. Entitlement to higher initial evaluations for asbestos-related pleural disease, rated as noncompensable prior to December 8, 2011; and as 10 percent disabling effective December 8, 2011.

2. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Alexander Panio, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1969 to January 1986.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2005 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Chicago, Illinois, which granted service connection for asbestos-related pleural disease and awarded a noncompensable rating. The Veteran has since been granted a 10 percent disability rating, effective December 8, 2011, and jurisdiction over the appeal has been transferred to the Cleveland, Ohio RO.
 
The Board remanded this case for further development in October 2011, May 2013, and July 2014. The case has returned to the Board for appellate review.

Although the issue of entitlement to TDIU was not certified for appeal, in Rice v. Shinseki, 22 Vet. App. 447 (2009), the United States Court of Appeals for Veterans Claims held that a TDIU claim is part of an increased rating claim when it is raised by the record. The Veteran has raised the matter of entitlement to TDIU during the pendency of the appeal. Thus, the issue is properly before the Board. As further development is required however, the issue is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Prior to December 8, 2011 the Veteran's asbestos-related pleural disease did not result in a Forced Vital Capacity (FVC) of 75- to 80-percent predicted value, or Diffusion Capacity of the Lung for Carbon Monoxide by the Single Breath Method (DLCO) of 66-80 percent predicted value.

2. At no point during the appeal period has the Veteran's asbestos-related pleural disease resulted in FVC less than 75 percent of predicted value, a DLCO less than 66 percent predicted value, a maximum exercise capacity less than 20 ml/kg/min oxygen consumption with cardiorespiratory limitation, or cor pulmonale or pulmonary hypertension, and it has not required outpatient oxygen therapy.


CONCLUSIONS OF LAW

1. The criteria for a compensable disability rating for the period prior to December 8, 2011, for asbestos-related pleural disease have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.96, 4.97, (Diagnostic Code (DC) 6833) (2014).

2. The criteria for a disability rating in excess of 10 percent for the period since December 8, 2011, for asbestos-related pleural disease have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.96, 4.97 (DC 6833) (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veteran's claim for a higher rating arises from his disagreement with the initial evaluation assigned following the grant of service connection. Once service connection is granted the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

VA has a duty to assist the Veteran in the development of a claim. This duty includes assisting the Veteran in the procurement of service treatment records (STRs) and other pertinent treatment records, and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. The Veteran's STRs and VA treatment records have been obtained and considered. The Veteran has not identified any additional outstanding records that have not been obtained. 

The Veteran underwent VA examinations in April 2000, December 2011, and June 2013 which involved reviews of the claims file, in-person interviews, and respiratory assessments, including pulmonary function testing (PFT). The Board finds these examinations to be adequate to evaluate the impact of the Veteran's disability on his earning capacity as the effects of the condition have been measured and described in sufficient detail so that the Board's evaluation will be fully informed. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

In July 2014 the Board remanded this claim for additional development. There has been substantial compliance with the Board's remand directives, insofar as VA acquired the outstanding August 2013 PFT results and obtained an addendum opinion addressing the Veteran's respiratory condition. D'Aries v. Peake, 22 Vet. App. 97 (2008); Stegall v. West, 11 Vet. App. 268 (1998).

The Board thus finds that all relevant facts have been properly developed, and all reasonable efforts were made by VA to obtain evidence necessary to substantiate the Veteran's claims. VA's duty to assist the Veteran has been satisfied.

II. Law

Disability evaluations are determined by the application of the Schedule for Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7. Where, as here, the question for consideration is the propriety of the initial evaluation assigned, evaluation of the medical evidence since the grant of service connection and consideration of the appropriateness of "staged ratings" is required. Fenderson v. West 12 Vet. App. 119, 126 (1999).

The Veteran's asbestos-related pleural disease has been rated under Diagnostic Code (DC) 6833 for asbestosis, which provides that Forced Vital Capacity (FVC) of 75- to 80-percent predicted value, or; Diffusion Capacity of the Lung for Carbon Monoxide by the Single Breath Method (DLCO (SB)) is 66- to 80-percent predicted, is rated 10 percent disabling. FVC of 65- to 74-percent predicted, or; DLCO (SB) of 56- to 65-percent predicted, is rated 30 percent disabling. FVC of 50- to 64-percent predicted, or; DLCO (SB) of 40- to 55-percent predicted, or; maximum exercise capacity of 15 to 20 ml/kg/min oxygen consumption with cardiorespiratory limitation is rated 60 percent disabling. FVC less than 50 percent of predicted value, or; DLCO (SB) less than 40-percent predicted, or; maximum exercise capacity less than 15 ml/kg/min oxygen consumption with cardiorespiratory limitation, or; cor pulmonale (right heart failure) or pulmonary hypertension, or; requires outpatient oxygen therapy, is rated 100 percent disabling. 38 C.F.R. § 4.97 (DC 6833).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). 

When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d at 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board").

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit (Federal Circuit), citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a) (West 2002). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). 

III. Analysis

The Veteran is in receipt of a noncompensable disability rating prior to December 8, 2011, and a 10 percent disability rating since then. The Veteran contends that the severity of his pleural disease warrants a higher rating. He has stated that he has suffered from shortness of breath, chest pain and coughing for many years.

At an April 2000 VA examination, the Veteran's PFT results were FVC of 123 percent predicted and DLCO of 105 percent predicted. The Veteran complained at the time of shortness of breath for the previous four to five years with an occasional cough. The Veteran was noted to have smoked a pack per day for almost 30 years, quitting in 1998. The examiner noted good bilateral air entry and no respiratory distress, wheezing, or crackles. He opined that there was no evidence of a current cardiorespiratory effect.

VA treatment records from May 2001 to March 2012 from the North Chicago VAMC show two instances of shortness of breath, no complaints of chest pain and occasional coughing.

VA treatment records from December 2007 to May 2013 from the Columbus VAMC show repeated findings of no cough, chest pain or shortness of breath. The Veteran is noted to be capable of breathing effortlessly and able to deep breathe and cough freely.

In December 2011 the Veteran underwent another VA examination. The Veteran complained of sporadic chest pressure and dyspnea, worse in the evenings, not with activity. A January 2012 addendum to the reports reflects that the Veteran's PFT results were FVC of 94 percent predicted and DLCO of 80 percent predicted. The Veteran did not have cor pulmonale or pulmonary hypertension and did not require outpatient oxygen therapy. The examiner stated that the Veteran's condition would have no impact on his ability to work.

The Veteran was prescribed a nasal inhalant in January 2012 for non-service-connected allergic rhinitis.

At a June 2013 VA examination the Veteran complained of worsening shortness of breath and occasional painful coughing. The Veteran stated he smoked from age 18 to age 55 and that he continued to smoke occasionally. The examiner found no cor pulmonale or pulmonary hypertension and the Veteran did not require outpatient oxygen therapy. The examiner opined that the Veteran's asbestos-related pleural disease does not impact the Veteran's ability to work and that the Veteran even stated he quit his most recent employment mainly due to knee arthritis but that he could perform his job even with the effects of the pleural disease. The examiner noted numerous medical records where the Veteran denied chest pain, coughing and shortness of breath. The examiner noted that overall the Veteran's asbestos-related symptoms were minimal and did not cause the Veteran to quit working. An August 2013 addendum included the Veteran's PFT results which showed FVC of 106 percent predicted and DLCO of 83 percent predicted. The examiner stated that the DLCO test results most accurately reflected the Veteran's level of disability. 

The accumulated test results from the Veteran's VA examinations do not indicate that a higher evaluation is warranted either before or after December 8, 2011. No FVC or DLCO test results prior to December 2011 are sufficient to warrant a compensable rating. Likewise no FVC or DLCO test results since December 2011 are sufficient to warrant a rating in excess of 10 percent. The Veteran has not required outpatient oxygen therapy and has not been diagnosed with cor pulmonale or pulmonary hypertension. As such, there is no basis for a higher schedular rating for asbestosis at any point during the appeal period. In reaching this conclusion the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

The Board finds that the rating criteria adequately contemplate the Veteran's disability, which has arguably been productive of occasional chest pain, coughing and shortness of breath. However, these symptoms have not been consistently reported, are not reflected in examination findings and have frequently been denied outright. Moreover, manifestations such as shortness of breath and coughing are inherently contemplated in the rating criteria for lung disease. The rating criteria are therefore adequate to evaluate the Veteran's pleural disease and referral for consideration of extraschedular rating is not warranted. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 



ORDER

A compensable disability rating for the period prior to December 8, 2011, for asbestos-related pleural disease, is denied.

A disability rating in excess of 10 percent for the period since December 8, 2011, for asbestos-related pleural disease, is denied.


REMAND

The Veteran has submitted statements indicating that he is currently unemployed due to his service-connected disabilities. The Board finds that the matter of entitlement to TDIU has been raised during the pendency of this appeal. See Rice, 2009. Accordingly, the claim for TDIU must be remanded so that the Veteran can be afforded appropriate notice and an opportunity to comment on his prior employment, education, training, and the impact of his service-connected disabilities on his employability. Moreover, the Board finds that a remand is necessary in order to afford the Veteran a VA examination so as to ascertain whether his service-connected disabilities render him unemployable.

Accordingly, the case is REMANDED for the following action:

1. Send the Veteran and his representative a letter addressing VA's duty to notify with respect to his TDIU claim, to include a VA Form 21-8940. The letter must give the Veteran the opportunity to address how his service-connected disabilities impact his ability to work.

2. Notify the Veteran that he may submit lay statements from other individuals who have first-hand knowledge, and/or were contemporaneously informed of the nature, extent and severity of his service connected disabilities and the impact of those conditions on his ability to work. The Veteran should be provided an appropriate amount of time to submit this lay evidence. 

3. Then schedule the Veteran for an examination with a vocational specialist, if available, to determine the impact of his service-connected disabilities on his ability to secure or follow a substantially gainful occupation. The claims file must be reviewed by the examiner and all necessary tests should be conducted.

After reviewing any newly submitted information concerning his employability and bearing in mind any limitations noted in the Veteran's previous VA examinations, the examiner should opine as to whether, without regard to the Veteran's age or the impact of any nonservice-connected disabilities, it is at least as likely as not that his service-connected disabilities alone render him unable to secure or follow a substantially gainful occupation. 

The examiner must take into consideration the Veteran's level of education, training, and previous work experience. 

The examiner should describe what type of employment activities would be limited due to his service-connected disabilities.

The examiner should provide an explanation for all elements of his/her opinion.

4. Then readjudicate the issue on appeal. If the benefits sought on appeal remain denied, furnish the Veteran and his representative with a Supplemental Statement of the Case and afford them the opportunity to respond before the file is returned to the Board for further consideration.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
Steven D. Reiss 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs