**William W. JEFFERSON,**
**Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of**
**Veterans Affairs, Respondent–**
**Appellee.**

**No. 00–7179.**

United States Court of Appeals,
Federal Circuit.

Nov. 13, 2001.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, KS, argued for claimant-appellant.

David D'Alessandris, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel, and Michelle Doses Bernstein, Attorney, Department of Veterans Affairs, of Washington, DC.

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

ARCHER, Senior Circuit Judge.

William W. Jefferson ("Jefferson") appeals the decision of the Court of Appeals for Veterans Claims, affirming the Board of Veterans' Appeals ("BVA") denial of service-connection for Jefferson's claim for disability benefits for hypertension and heart disease. Because Jefferson's appeal does not invoke our jurisdiction, we dismiss.

## DISCUSSION

### I.

Jefferson served on active duty in the U.S. Army from April 1943 to November 1945. He was held as a prisoner of war ("POW") by Germany from early-to-mid 1944 until April 1945.

In September 1988, Jefferson sought treatment from the Department of Veterans Affairs ("VA"). He reported that he had been told he had high blood pressure a couple of months earlier in a VA hospital, but that he was not taking medication for the condition. The September 1988 examination confirmed that Jefferson had high blood pressure, and Jefferson filed a claim for service-connection for an enlarged heart with the VA Regional Office ("RO"). The RO requested Jefferson's service medical records from the National Personnel

Records Center. In December 1988, the VA was informed that Jefferson's service medical records were likely destroyed by a fire in 1973.

The VA gave Jefferson a POW protocol examination in November 1988. During this exam, Jefferson reported that during his captivity he experienced, among other things, numbness, tingling and pain in his legs, arms, fingers and feet, vitamin deficiency, and emotional or psychological problems. The VA examiner noted that Jefferson had an enlarged heart and hypertension, and that he was taking medication for the hypertension. In a second examination in April 1989, the VA examiner recommended that Jefferson be awarded service-connection for post-traumatic stress disorder, degenerative joint disease, depression and hypertension. The examiner stated that Jefferson reported having been diagnosed with hypertension within a year after his return from the POW camp.

In May 1989, the RO requested that Jefferson supply records of any treatment he received within a year of discharge, particularly related to hypertension. Jefferson responded that he had been treated by Army doctors prior to his discharge. He further responded that he had also been treated by his personal family physician, who is now deceased, and that records were not available. In November 1989, the RO denied service-connection for coronary artery disease and hypertension.

Jefferson appealed the denial to the BVA. He argued that he was entitled to service-connection for his hypertension under 38 C.F.R. §§ 3.307 and 3.309(a), which provide that where a veteran has served for 90 days or more during a period of war, and cardiovascular-renal disease (including hypertension) becomes manifest to a degree of 10 percent within one year from the date of termination of service, the disease will be presumed to have been incurred in service. 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (1988). He also argued that his heart condition was covered by 38 C.F.R. § 3.309(c), which provides that for a prisoner of war, where beriberi heart disease, including ischematic heart disease in a former POW who experienced localized edema during captivity, becomes manifest to a degree of 10 percent or more any time after separation from service, the disease will be presumed to be service-connected under the conditions of section 3.307. 38 C.F.R. § 3.309(c) (Supp.2001). At a BVA hearing, Jefferson testified under oath that he was treated within one year after returning from the POW camp, was told at that time that he had high blood pressure or blood problems, and had been taking medication ever since.

After further proceedings, including a remand to the RO, Jefferson was again examined in December 1994. The examiner found no evidence of heart disease, but found hypertension, a "[h]istory of malnutrition and possibly vitaminosis ... [no] residuals" and "no disease process ... specifically [related] to the POW experience." In March 1995, Jefferson submitted a passage from a 1992 study titled, "The Health of Former Prisoners of War" detailing a link between beriberi heart disease, hypertension, and prisoner of war status.

The RO eventually denied Jefferson service-connection for heart disease and hypertension, but awarded service-connection for post-traumatic stress disorder. Jefferson appealed the denial of service-connection for heart disease and hypertension. The BVA rejected Jefferson's claim because it found that the VA exam showed no evidence of heart disease, no diagnosis of beriberi or ischematic heart disease, no evidence that Jefferson suffered localized edema during his captivity, and no evidence of hypertension within one year following service.

The Court of Appeals for Veterans Claims affirmed the BVA's denial. Jefferson submitted additional medical treatises on appeal, suggesting a statistical likelihood that POW's suffer from increased incidence of beriberi heart disease, and an overlap in some cases between the conditions with which Jefferson was diagnosed and beriberi heart disease. The CAVC considered the treatises, but found that they did not demonstrate plausible causality of beriberi heart disease under the facts of this case.

## II.

■ Pursuant to 38 U.S.C. § 7292, not every decision entered by the Court of Appeals for Veterans Claims is appealable. Section 7292(a) provides that a party may only seek review of a decision of the Court of Appeals for Veterans Claims with respect to the validity or interpretation of any statute or regulation relied on by the court in making its decision, "other than a determination as to a factual matter." 38 U.S.C. § 7292(a) (Supp.2001). Further, except to the extent that an appeal presents a constitutional issue, this court may not review "(A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2) (1988). If an appellant's case does not meet these criteria, 38 U.S.C. § 7292(d) requires this court to dismiss the appeal. *See In re Bailey,* 182 F.3d 860, 865–69 (Fed.Cir.1999).

Jefferson argues he is not challenging the application of law to fact. He argues that the Court of Appeals for Veterans Claims misinterpreted the regulations by incorrectly imposing a higher burden of proof than the regulations require for the predicate facts leading to a presumption of service-connected disease under 38 C.F.R. §§ 3.309(a) and (c). He argues that the court ignored 38 C.F.R. § 3.307(b), which provides that a veteran may produce lay or medical evidence to support his claim of service-connection. Specifically, Jefferson argues that the court failed to credit his lay testimony that he had been treated for hypertension within a year of his discharge from service, and ignored his proffer of medical treatises to show that his hypertension indicated he had beriberi heart disease.

The government responds that Jefferson merely seeks review of the specific factual determination by the BVA. It argues that Jefferson takes issue with the BVA's findings that his hypertension was not connected to his time in service, and that he never had beriberi heart disease, including ischematic heart disease together with localized edema during captivity. It urges that we lack jurisdiction to review Jefferson's case.

■ We agree that we lack jurisdiction over this appeal. At bottom, Jefferson's appeal merely challenges the BVA's fact-finding and application of law to fact below. Jefferson argues essentially that the Court of Appeals for Veterans Claims erred because he submitted enough proof, medical and lay evidence to establish treatment of hypertension within one year of discharge, and of beriberi heart disease. These are factual challenges over which we have no jurisdiction. *See* 38 U.S.C. § 7292; *Madden v. Gober,* 125 F.3d 1477, 1481 (Fed.Cir.1997). The Court of Appeals for Veterans Claims properly considered all of the evidence Jefferson proffered, but did not find it sufficiently convincing or competent to establish the predicate facts that would trigger a presumption of service-connection under sections 3.309(a) or (c), i.e., that he had hypertension within one year of his service, or that he ever had beriberi heart disease including ischematic heart disease with prior localized edema. Finally, since the record established that Jefferson's

recollections differed as to whether he had been treated for hypertension before 1988, we may assume that the BVA and the Court of Appeals for Veterans Claims evaluated the competency of the lay evidence he presented and found it unavailing.

To the extent Jefferson attempted to assert a claim of legal interpretation, it is similar to an argument that was made, and rejected, in *Madden*, 125 F.3d 1477. Like Jefferson, Madden argued that section 3.307(b) should be interpreted such that any evidence submitted by the veteran showing manifestation of the claimed disability within the prescribed time is sufficient to gain the presumption of service-connection. *Id.* at 1480. "As long as the veteran proffers some evidence of such manifestation, regardless of its reliability or credibility, Madden argues that the presumption is created and the burden shifts to the agency to rebut the presumption, by a preponderance of the evidence, with contrary evidence." *Id.* Madden also argued that any medical evidence of presumptive service-connection satisfies section 3.307(b), thus shifting the burden to the agency, "regardless of the strength or soundness of the proffered evidence." *Id.* at 1481. We squarely rejected these arguments in *Madden*, stating that they would "emasculat[e] ... the Board's inherent fact-finding ability." *Id.* To the extent that Jefferson's appeal reiterates this argument in relation to the establishment of predicate facts under 38 C.F.R. §§ 3.309(a) and (c), it has been discounted in *Madden* as essentially a quarrel with the BVA's fact-finding ability.

Because we have no jurisdiction to review this appeal, it is dismissed.

*DISMISSED.*