Citation Nr: 1617317 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 11-02 707A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Philadelphia, Pennsylvania


THE ISSUE

Entitlement to a disability rating in excess of 10 percent for service-connected head trauma residuals due to a traumatic brain injury (TBI) with chronic headaches.


REPRESENTATION

Veteran represented by: National Association of County Veterans Service Officers


ATTORNEY FOR THE BOARD

J. Ivey-Crickenberger, Associate Counsel





INTRODUCTION

The Veteran served on active duty from October 1943 to October 1945. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania.

This appeal was previously before the Board, which remanded the appeal for further development and readjudication in April 2015. The remand directives were properly completed. Stegall v. West, 11 Vet. App. 268 (1998). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

The preponderance of the evidence shows that the Veteran's TBI residuals consist only of subjective symptoms, primarily headaches, which are not prostrating, occur daily and are mild to moderate in severity. 


CONCLUSION OF LAW

The criteria for a rating in excess of 10 percent for TBI-related subjective symptoms, primarily headaches, have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.124a, Diagnostic Code 8045 (2015).






REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

Before addressing the merits of the Veteran's claim on appeal, the Board is required to ensure that the VA's "duty to notify" and "duty to assist" obligations have been satisfied. See 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015). Notice requirements were met in letters dated April 2009 and August 2009.

As to the duty to assist, the record reflects that the Veteran's private medical records have been obtained. Also of record are pertinent VA examination reports and lay evidence. The Veteran was afforded VA examinations addressing his headache disability/TBI in June 2009, August 2009, and August 2014. These VA examination reports were not adequate for the Board to adjudicate the claim. In the Board's April 2015 remand, the RO was asked to request an addendum opinion clarifying the severity of the Veteran's headache symptoms. The RO requested an expert medical opinion which satisfied the Board's request. The VA examination reports along with the September 2015 expert medical opinion together are adequate because they are based on the Veteran's medical history and they describe the disability in sufficient detail so that the Board's decision is a fully informed one. Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007).

The Veteran was offered an opportunity to testify at a hearing before the Board, but he declined. The Veteran has not identified any outstanding evidence that could be obtained to further substantiate the claim, and the Board is also unaware of any such evidence. For the foregoing reasons, the Board concludes that all reasonable efforts were made by the VA to obtain evidence necessary to substantiate the Veteran's claims. 

Principles for Rating Disabilities

Disability ratings are determined by applying a schedule of ratings (Rating Schedule) that is based on average impairment of earning capacity. Separate diagnostic codes (DCs) identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history, and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of a veteran working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.
 
The Rating Schedule recognizes that disability from distinct injuries or diseases may overlap. See 38 C.F.R. § 4.14. However, the evaluation of the same disability or its manifestation under various diagnoses, which is known as pyramiding, must be avoided. Id. 

To evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Where an increase in the level of a disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). Separate ratings for distinct periods of time, based on the facts, may be considered. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Rating TBI Residuals - Regulatory Overview

Diagnostic Code 8045 provides evaluation for three main areas of dysfunction that may result from traumatic brain injury and have profound effects on functioning: cognitive (which is common in varying degrees after a traumatic brain injury), emotional/behavioral, and physical. Each of these areas of dysfunction may require evaluation. 38 C.F.R. § 4.124a, Diagnostic Code 8045. 

Cognitive impairment is defined as decreased memory, concentration, attention, and executive functions of the brain. Executive functions are goal setting, speed of information processing, planning, organizing, prioritizing, self-monitoring, problem solving, judgment, decision making, spontaneity, and flexibility in changing actions when they are not productive. Not all of these brain functions may be affected in a given individual with cognitive impairment, and some functions may be affected more severely than others. In a given individual, symptoms may fluctuate in severity from day to day. Evaluate cognitive impairment under the table titled "Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified." Id. 

Subjective symptoms may be the only residual of a traumatic brain injury or may be associated with cognitive impairment or other areas of dysfunction. Evaluate subjective symptoms that are residuals of a traumatic brain injury, whether or not they are part of cognitive impairment, under the subjective symptoms facet in the table titled "Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified." However, separately evaluate any residual with a distinct diagnosis that may be evaluated under another diagnostic code, such as migraine headache or Meniere's disease, even if that diagnosis is based on subjective symptoms, rather than under the "Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified" table. 

Evaluate emotional/behavioral dysfunction under 38 C.F.R. § 4.130 (Schedule of ratings-mental disorders) when there is a diagnosis of a mental disorder. When there is no diagnosis of a mental disorder, evaluate emotional/behavioral symptoms under the criteria in the table titled "Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified." 

Evaluate physical (including neurological) dysfunction based on the following list, under an appropriate diagnostic code: motor and sensory dysfunction, including pain, of the extremities and face; visual impairment; hearing loss and tinnitus; loss of sense of smell and taste; seizures; gait, coordination, and balance problems; speech and other communication difficulties, including aphasia and related disorders, and dysarthria; neurogenic bladder; neurogenic bowel; cranial nerve dysfunctions; autonomic nerve dysfunctions; and endocrine dysfunctions. 

The preceding list of types of physical dysfunction does not encompass all possible residuals of a traumatic brain injury. For residuals not listed here that are reported on an examination, evaluate under the most appropriate diagnostic code. Evaluate each condition separately, as long as the same signs and symptoms are not used to support more than one evaluation, and combine under § 4.25 the evaluations for each separately rated condition. The evaluation assigned based on the "Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified" table will be considered the evaluation for a single condition for purposes of combining with other disability evaluations. 

Consider the need for special monthly compensation for such problems as loss of use of an extremity, certain sensory impairments, erectile dysfunction, the need for aid and attendance (including for protection from hazards or dangers incident to the daily environment due to cognitive impairment), being housebound, etc. 

Evaluate cognitive impairment and subjective symptoms: The table titled "Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified" contains 10 important facets of a traumatic brain injury related to cognitive impairment and subjective symptoms. It provides criteria for levels of impairment for each facet, as appropriate, ranging from 0 to 3, and a 5th level, the highest level of impairment, and labeled "total." However, not every facet has every level of severity. The consciousness facet, for example, does not provide for an impairment level other than "total," since any level of impaired consciousness would be totally disabling. Assign a 100-percent evaluation if "total" is the level of evaluation for one or more facets. If no facet is evaluated as "total," assign the overall percentage evaluation based on the level of the highest facet as follows: 0 = 0 percent; 1 = 10 percent; 2 = 40 percent; and 3 = 70 percent. For example, assign a 70 percent evaluation if 3 is the highest level of evaluation for any facet. 

Note (1): There may be an overlap of manifestations of conditions evaluated under the table titled "Evaluation of Cognitive Impairment and Other Residuals of TBI Not Otherwise Classified" with manifestations of a comorbid mental or neurologic or other physical disorder that can be separately evaluated under another diagnostic code. In such cases, do not assign more than one evaluation based on the same manifestations. If the manifestations of two or more conditions cannot be clearly separated, assign a single evaluation under whichever set of diagnostic criteria allows the better assessment of overall impaired functioning due to both conditions. However, if the manifestations are clearly separable, assign a separate evaluation for each condition. 

Note (2): Symptoms listed as examples at certain evaluation levels in the table are only examples and are not symptoms that must be present in order to assign a particular evaluation. 

Note (3): "Instrumental activities of daily living" refers to activities other than self-care that are needed for independent living, such as meal preparation, doing housework and other chores, shopping, traveling, doing laundry, being responsible for one's own medications, and using a telephone. These activities are distinguished from "Activities of daily living," which refers to basic self-care and includes bathing or showering, dressing, eating, getting in or out of bed or a chair, and using the toilet. 

Note (4): The terms "mild," "moderate," and "severe" traumatic brain injury, which may appear in medical records, refer to a classification of traumatic brain injury made at, or close to, the time of injury rather than to the current level of functioning. This classification does not affect the rating assigned under Diagnostic Code 8045. 

Analysis - Chronic Headaches and TBI

As an initial matter, the Board notes that a veteran is generally competent to report a TBI and symptoms thereafter. The Veteran's service-connected headaches are rated as residuals of a TBI currently, and the Board reiterates that the Veteran experienced a TBI in service.

The Veteran's chronic headaches are currently rated as 10 percent disabling under 38 C.F.R. § 4.124a, Diagnostic Code 8045. The Veteran contends that his headaches occur more frequently and are more severe than recognized by his current rating. See, e.g., December 2009 notice of disagreement. The appeal period for this claim stretches back to August 2009.

The Board notes that there are two possible diagnostic codes that cover the Veteran's headache disability: diagnostic codes 8045 and 8100 under 38 C.F.R. § 4.124a.

Migraines (to include, by analogy, headaches) are rated under diagnostic code 8100. A 50 percent rating is warranted for very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. This is the highest rating available under this Diagnostic Code. A 30 percent rating is assigned for characteristic prostrating attacks occurring on an average once a month over last several months. A 10 percent rating is assigned for characteristic prostrating attacks averaging one for every two months during the last several months. A noncompensable rating is assigned for less frequent prostrating attacks. 38 C.F.R. § 4.124a, DC 8100.

In this case, the evidence of record does not show the Veteran experiences prostrating attacks. In fact, the evidence suggests that rest makes the Veteran's headaches worse. See June2014 treatment note of J.H. ("headache worse when resting"). As such, the Veteran would be entitled to a noncompensable rating under diagnostic code 8100.

Alternatively, the Veteran's headache disability may be rated under diagnostic code 8045, which governs the rating of the residuals of a TBI. The criteria for rating under diagnostic code 8045 are multifaceted, as discussed in detail above. 

The Veteran's chronic headaches fall under the "subjective symptoms" facet for residuals of TBI. The medical evidence, primarily contained in the August 2009 VA examination report, reflects that all of the Veteran's TBI residuals - which consist primarily of chronic headaches - are contemplated in the "subjective symptoms" facet. Each facet under the TBI rating code is assigned a level of impairment. 38 C.F.R. § 4.124a, DC 8045. 

Under the subjective symptoms facet, the level of impairment ranges from zero to two. The criteria for a level of impairment of zero, which corresponds with a noncompensable rating, includes subjective symptoms that do not interfere with work; instrumental activities of daily living; or work, family, or other close relationships. Examples are: mild or occasional headaches, mild anxiety. Id. 

The criteria for a level of impairment of one, which corresponds with a 10 percent rating, includes three or more subjective symptoms that mildly interfere with work; instrumental activities of daily living; or work, family, or other close relationships. Examples of findings at this level of impairment are: intermittent dizziness, daily mild to moderate headaches, tinnitus, frequent insomnia, hypersensitivity to sound, and hypersensitivity to light. Id. 

The criteria for a level of impairment of two, which corresponds with a 40 percent rating, includes three or more subjective symptoms that moderately interfere with work; instrumental activities of daily living; or work, family, or other close relationships. Examples of findings at this level of impairment are: marked fatigability, blurred or double vision, headaches requiring rest periods during most days. Id. 

The June 2009 VA examination regarding TBI did not assign a severity rating or discuss all the pertinent symptomatology for rating purposes. The August 2009 VA examination report indicates TBI symptoms including severe headaches with occasional nausea, severe dizziness or vertigo, moderate sleep disturbance, moderate hypersensitivity to noise, and moderate fatigue. Each of these symptoms fall under the "subjective symptoms" facet. As the evidence showed the three or more subjective symptoms with mild functional impact, the RO determined that the 10 percent rating in effect continued to be appropriate. The RO also noted that the Veteran's reportedly severe headaches resulted in no neurological deficits or activity restrictions. The August 2014 VA examination report also did not assign a severity rating or discuss all the pertinent symptomatology for rating purposes.

The Veteran appealed the RO's rating decision, and the Board determined that the VA examinations failed to clearly and specifically discuss the symptoms of the Veteran's headache disability using pertinent regulatory language. As a result, the Board remanded the appeal for the Appeals Management Center (AMC) to obtain an opinion as to whether the Veteran's non-migraine headaches were "mild or occasional," "daily, mild to moderate," or "requiring rest periods during most days." The AMC subsequently requested an expert medical opinion, which was issued in August 2015. 

The August 2015 expert medical opinion discussed medical and lay evidence in the Veteran's claims file and determined that the evidence reflected the best characterization of the Veteran's headache disability was "daily mild to moderate" without requiring rest periods during most days. In support of this conclusion, the provider noted that the Veteran's lay statements were consistently silent for requiring rest periods. The Board notes that the medical evidence also does not reflect the Veteran's headaches required rest periods during most days. The expert opinion cites additional evidence to support the conclusion and also states that the Veteran's nonservice-connected disabilities likely aggravated his headache disability. The Board finds the expert medical opinion probative and persuasive.

Even so, the Board must consider all the pertinent evidence of record. The Board is also charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the Federal Circuit, citing its decision in Madden, recognized that the Board had an inherent fact-finding ability. Id. at 1076; see also 38 C.F.R. § 7104(a) (2015). Moreover, the Court has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992).

Numerous lay statements have been received by the RO on the Veteran's behalf indicating that the Veteran has suffered from significant headaches for a long time. For instance, a letter from the Veteran's daughter dated August 2009 reflects the Veteran has had severe headaches her entire life. Another lay statement from a friend, D.M., dated August 2009 reflects that the Veteran had experienced headaches for as long as she had known him - the previous 24 years - and his headaches did not respond to over the counter medication. D.M. also noted that she was currently in the Veteran's company several times per week and his headaches continued without relief. Although these letters reinforce the Veteran's claim that he has suffered from near daily headaches since service, the letters do not suggest that the headaches required periods of rest most days or resulted in prostrating attacks.

In statements dated March 2012 and August 2014, the Veteran stated that he had been having headaches since leaving service and that nothing helped. Although the Board notes that this evidence is competent and credible, it does not suggest that the Veteran's headache disability required periods of rest most days or resulted in prostrating attacks.

Letters received from the Veteran's chiropractor R.G. dated November 2009 and December 2010 reflect the Veteran had been treated by the provider, often several times per week, for severe head pain which had been validated by objective testing. R.G. noted that the chiropractic adjustments provided some temporary headache relief; however, the Veteran's severe head pain was permanent in nature. A letter received from the Veteran's subsequent chiropractor, J.P., dated March 2012, reflects the Veteran had continuously complained of headaches throughout his treatment for musculoskeletal pain. Another letter from J.P. dated August 2014 reflects that the chiropractic adjustments provided some temporary relief for the Veteran's headaches. J.P.'s treatment records reflect the Veteran frequently complained of painful headaches. Although these letters and records reinforce the Veteran's claim that he continues to suffer from chronic headaches, they do not suggest that the headaches required periods of rest most days or resulted in prostrating attacks.

VA treatment records reflect the Veteran sought treatment for two isolated, very severe headaches in May 2012 and September 2013. In May 2012, the Veteran went to the emergency department for a severe headache, the headache resolved after he discontinued a medication. See June 2012 VA treatment note. The September 2013 headache was accompanied by severe shoulder pain. Headache pain was described as a ten out of ten and the Veteran stated he couldn't even lie on a pillow. The Veteran reported that he had a history of chronic headaches, but this one was not the same type of headache; he denied any nausea, vomiting, vision changes, dizziness or lightheadedness, chest pain, loss of strength, difficulty ambulating, or problems with speech. An October VA treatment note reflects the severe headache resolved with no recurrence. Although these records suggest the Veteran suffers from occasional very severe headaches, it is unclear if these isolated episodes are connected to the Veteran's service-connected headache disability. Moreover, these records do not suggest that his headache disability required periods of rest most days or resulted in prostrating attacks.

The April 2015 Board remand specifically asked the RO to notify the Veteran that he could submit additional lay statements from himself and others who had first-hand knowledge of the nature and severity of the Veteran's headache disability. The RO notified the Veteran as such in an April 2015 letter. No additional lay evidence was received. 

As the evidence does not show that the Veteran's headache disability required periods of rest on most days or resulted in prostrating attacks, an increased rating is not appropriate. The preponderance of the evidence is against the claim; as such, the benefit of the doubt doctrine is not applicable. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54 (1990).

Extraschedular Consideration

In exceptional cases, an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

The rating criteria for the 10 percent rating in effect for the entire appeal period contemplate the severity and symptoms of the Veteran's service-connected headache disability. The Veteran's headache disability is manifested by daily, mild to moderate headaches which do not require rest periods during most days or result in prostrating attacks. These manifestations of the Veteran's disability are contemplated in the general schedule of ratings for the residuals of TBI located at 38 C.F.R. § 4.124a, DC 8045. The rating criteria are therefore adequate to evaluate the Veteran's residuals of TBI, which primarily includes headaches, and referral for consideration of extraschedular rating is not warranted.

In addition, the Veteran has not raised, and the evidence of record does not otherwise suggest the matter of entitlement to a total disability rating based on individual unemployability (TDIU). Rice v. Shinseki, 22 Vet. App. 447 (2009). As such, further consideration of Rice is not required; however, the Board notes that the April 2015 Board remand requested the RO obtain a medical opinion discussing the impact of the Veteran's headache disability on his ability to secure and maintain substantially gainful employment. The resulting August 2015 expert medical opinion reflects that the Veteran's headache condition did not impact his ability to work. In support of this conclusion, the provider cited the August 2014 VA examination report, which noted the Veteran had a successful career and employment status until 2008 when he retired as a builder, at age 83, because of poor eye sight. Therefore, the Board finds that the issue of entitlement to a TDIU has not been reasonably raised by the record.


ORDER

A rating in excess of 10 percent for service-connected head trauma residuals due to a traumatic brain injury (TBI) with chronic headaches is denied.


____________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs