Citation Nr: 1823351 
Decision Date: 04/20/18 Archive Date: 04/26/18

DOCKET NO. 10-31 148 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus

3. Whether new and material evidence has been received in order reopen a claim of entitlement to service connection for a low back disorder, and if so whether service connection is warranted. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Robert Batten, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 1965 to September 1968.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Baltimore, Maryland. 

In June 2017, the Veteran testified before the undersigned in a Board hearing. 

The issue of entitlement to service connection for hearing loss is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Service connection for a herniated intervertebral disc post-operative disability was denied in a December 1978 rating decision that was not appealed.

2. Evidence received since the December 1978 rating decision includes evidence that that is not cumulative or redundant of the evidence previously of record and is sufficient, when considered by itself or with previous evidence of record, to raise a reasonable possibility of substantiating the claim for service connection for a low back condition. 

3. There is competent, credible and probative evidence of record of a nexus between the Veteran's in-service back injury and a current low back disability.

4. The evidence is at least evenly balanced as to whether tinnitus was incurred in service.


CONCLUSIONS OF LAW

1. As new and material evidence has been received since the issuance of a final December 1978 decision, the criteria for reopening the claim for service connection for a low back disability are met. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (2017).

2. The criteria for entitlement to service connection for a low back disability characterized as L1-S1 disc space disease with facet joint hypertrophy and bilateral neuroforaminal narrowing, have been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 5107(b) (2012); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2017).

3. The criteria for service connection for tinnitus are met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

II. New and Material Evidence for Low Back Disability Claim 

Generally, a claim that has been denied in an unappealed Board or rating decision may not thereafter be reopened and allowed. 38 C.F.R. §§ 20.1100, 20.1103. The exception to this rule is 38 U.S.C. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. 

New evidence is defined as existing evidence not previously submitted to agency decisionmakers. Material evidence means evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence previously of record, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156 (a). 

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence, although not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

Regardless of the AOJ's actions, given the previous unappealed denial of the claim on appeal, the Board has a legal duty under 38 U.S.C. §§ 5108, 7104 (2012) to address the question of whether new and material evidence has been received to reopen the claims for service connection. This matter goes to the Board's jurisdiction to reach the underlying claims and adjudicate the claims on a de novo basis. See Barnett v. Brown, 83 F. 3d 1380, 1383 (Fed. Cir. 1996).

The Board finds the record contains new and material evidence sufficient to reopen the Veteran's claim for a low back condition.

A December 1978 rating decision denied the Veteran's claim for service connection for a herniated disc post-operative disability because there was no evidence of a nexus between the Veteran's diagnosed disc condition and his service. The Veteran did not appeal, and new and material evidence was not received within the appellate period; thus the December 1978 decision is final. 38 C.F.R. §§ 20.200.

Since December 1978, new evidence has been added to the record. Pertinent to the Veteran's low back claim is a November 2017 opinion from the Veteran's private physician. The Veteran's private physician opined that a damaged disc was likely caused by an injury sustained in active duty. This new evidence when considered with previous evidence of record, relates to the unestablished fact of nexus necessary to substantiate his claim. Therefore, this evidence is new and material, and reopening of the claim is in order. Shade v. Shinseki, No. 08-3548 (U.S. Vet. App. Nov. 2, 2010).

The evidence identified above relates to unestablished fact necessary to substantiate the claims and raises a reasonable possibility of substantiating the Veteran's claim. This evidence is therefore material and sufficient to reopen the previously-denied claims for service connection for a low back disability. Accordingly, the Board reopens this claim for de novo review on the merits. 38 U.S.C. §§ 5108, 7105; 38 C.F.R. § 3.156.

III. Service Connection Generally 

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table). 

Where a veteran served continuously for ninety days or more during a period of war or during peacetime service after December 31, 1946, and a chronic disease, including organic diseases of the nervous system (such as tinnitus) and arthritis, becomes manifest to a degree of ten percent within one year of termination of such service, such disease shall be presumed to have been incurred in or aggravated by service even though there is no evidence of such disease during the period of service. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. The disease need not be diagnosed within a presumptive period, it must be shown by acceptable medical or lay evidence, that there were characteristics manifestations of the disease to the required degree during that time. Id. 

Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. For the showing of "chronic" disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. With chronic disease as such in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required for service connection. 38 C.F.R. § 3.303 (b). The second and third elements outlined above may be established by showing continuity of symptomatology for certain specified diseases. Continuity of symptomatology may be shown by demonstrating "(1) that a chronic disease was 'noted' during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology." Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); see also Davidson, 581 F.3d at 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board"). 

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and continuity of his or her current symptomatology. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed.Cir.2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1376-77.

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit (Federal Circuit), citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C. § 7104 (a). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, and consistency with other evidence submitted on behalf of the veteran, and the veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996).

IV. Low Back Disability

The Veteran contends that he injured his back in service. The Veteran's service treatment records indicate that in February 1967 the Veteran had a back injury. The service treatment records note that the Veteran had intermittent lumbar back pain for two months. The lumbar pain was attributed to lifting electronic equipment. In March 1967, the Veteran was diagnosed with an acute back stain. 

In May 1978, the Veteran's private surgeon provided a letter to the Veteran's employer to update the employer on the Veteran's back condition. The private surgeon stated that the Veteran had some back problems since service, which was only a chronic strain. The private surgeon noted that the Veteran sustain an acute injury of the lumbar spine in April 1978 and ruptured his intervertebral disc. 

A June 1978 letter from the Veteran's private physician provided a brief summary of the Veteran's back condition in 1978. The private physician stated that the Veteran first received treatment for back pain in April 1978. The Veteran had pain in his right back that radiated to his right leg. In May 1978, the Veteran complained of more pain and there was evidence of lumbar nerve root impeachment. The Veteran was referred to another private physician who proceeded to perform disc surgery. 

In June 1978, the Veteran's back surgeon private a summary and treatment records related to the Veteran's back treatment. The records indicate that in May 1978, the Veteran had an x-ray examination that revealed some narrowing at L5-S1. In May 1978, the Veteran underwent back surgery; the surgeon stated that the Veteran had a massive extrusion of disc material at the L5-S1. The surgeon removed multiple free fragments of extruded material. 

In October 2008, the Veteran's private physician, Dr. F, submitted a letter concerning the Veteran's back disability. Dr. F. stated that the Veteran originally sustained a low back injury, in 1967, in service. Dr. F. stated that the Veteran had back surgery in 1976, in which a herniated nucleus pulposus was removed. Dr. F. stated that the Veteran had intermittent pain until 1981. In 1981 the Veteran developed significant pain and underwent a radio frequency facet denervation. Dr. F. noted that the Veteran continued to have intermittent low back that occasionally radiated to his right leg. In 1993, the Veteran had an MRI which revealed clear degenerative problems. The Veteran's private physician at the time noted that the Veteran's low back pain was likely the result of L1-S1 disc space disease with involvement of the adjacent facet joints. Dr. F. stated he was a general internist, not an orthopedic or neurosurgeon and that his opinion was based upon the Veteran's history and intermittent physical examinations. Dr. F. opined that the back pain which eventually required surgery was likely caused by an injury the Veteran describe in-service. Dr. F. stated that the discomfort that the Veteran experienced over the years had been documented to come from an area which is the site of his pervious surgery and the site of the previous injury. Dr. F. stated that it would seem there was a definite cause and effect, with a long term sequelae of chronic low back pain. 

In November 2017, Dr. F. provided another medical summary and opinion concerning the Veteran's back condition. Dr. F. noted that the Veteran injured his back in service. The injury was noted as a sprain and the Veteran was treated conservatively with muscle relaxants and light duty. Dr. F. stated the treatment never resolved the Veteran's discomfort. Dr. F. stated the Veteran underwent an MRI in July 2016. Dr. F. found at L5-S1 an uncovering of the undersurface of intervertebral discs related to retrolisthesis with inferiorly directed disc extrusion. The Veteran had joint facet hypertrophy, which resulted in moderate bilateral neuroforaminal narrowing. Dr. F. stated that it appeared that existing nerve roots abutted the osteophytes in the foramina. Dr. F. opined that the pain in the Veteran's low back over the ensuing eleven years after service finally resulted in surgery to remove a damaged disc was likely caused by an injury he sustain in active duty. Dr. F. reasoned that the resulting discomfort documented over the years came from the area which was injured in 1967 and the site of the previous surgery. Dr. F. stated it would seem there was a definite cause and effect, with a long term sequelae of chronic low back pain. 

An undated note in the record indicates a February 1967 back injury from lifting electronic equipment. The note indicated the discharge examination was negative for a back condition or compensation. Although the note was undated "Veterans Benefits Management System" (VBMS) dated the note to February 1971. A complete application for VA benefits for the Veteran's back was submitted in May 1978.

In May 1978, the Veteran's employer requested medical documentation of the Veteran's back condition because the Veteran filed for a worker's compensation benefits. The letter indicated that the Veteran reported a job-related traumatic injury in April 1978 while he performed his official duties. 

In June 1980, the Veteran provided a statement related to his back injury. The Veteran stated his original injury occurred in April 1978. The Veteran stated he agreed to undergo another back surgery. 

Since July 2009, the Veteran consistently stated that he injured his back while in-service. He stated that he had an x-ray and given muscle relaxers. The Veteran stated the pills did not work and he was given light duty. The Veteran stated that he worked through the pain without going to sick call. The Veteran stated he had back pain since leaving service. The Veteran stated that he had decreased range of motion and intermittent pain.

In June 2017, the Veteran's spouse, whom he had married in 1967, provided a statement concerning the Veteran's back condition. The Veteran's spouse stated that she remembered that the Veteran injured his back in service while in Germany. The Veteran's spouse stated that from that point on, the Veteran had back pain with intermittent episodes of being unable to perform his work due to his injury. The Veteran's spouse stated since leaving service the Veteran had treatment for his low back pain including surgery in the 1970s. The Veteran's spouse stated that the Veteran continued to have back pain which interfered with many activities in which he regularly participated. 

In July 2017, the Veteran stated that he believed his chronic strain led to his ruptured disk at a young age. The Veteran stated he initially filed a VA benefits claim in 1971 because of the pain and discomfort from his back injury. 

In June 2017, the Veteran testified in a Board hearing. The Veteran testified that he injured his back in service. The Veteran stated that he had pain in his back since his in-service injury. The Veteran stated he was in a work related injury in 1976. The Veteran stated he had back surgery and that the surgery was in the same area of the back where he had his in-service back sprain. The Veteran testified that he believed his work injury was an exacerbation of his in-service injury. The Veteran stated that even before his work injury he would have back pain when he would bend for five minutes. 

Initially, the Board finds that the Veteran has a current lumbar disability. The Veteran's physician Dr. F. diagnosed the Veteran with retrolisthesis with inferiorly directed disc extrusion in the L5-S1. Dr. F. also stated that the Veteran had joint facet hypertrophy resulting in bilateral neuroforaminal narrowing. He also noted that historically the record contains an earlier diagnosis of L1-S1 disc space disease with involvement of the adjacent facet joints. Further, the Board finds that the Veteran had a low back injury in service, as service treatment records documented back pain and diagnosed the Veteran with a back strain.

Thus, the remaining question is whether the Veteran's current back disorder is related to his back injury in-service. The central question is whether the Veteran's in-service back injury or an intercurrent work related back injury in April 1978 caused his current back disability. As stated above, continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage v. Gober, 10 Vet. App. 488 (1997), overruled on other grounds by Walker v. Shinseki. Service connection based solely on continuity of symptomatology is only permissible for chronic diseases under 38 C.F.R. § 3.309 (a) such as arthritis. Walker. The evidence indicates, however, that the Veteran has disc disease and not arthritis. 

The Veteran stated that he first claimed his back disorder in 1971. Although the record indicates that the Veteran did not submit an application for a back disorder until May 1978, the Veteran and his spouse have competently and credibly stated that the Veteran had intermittent back pain since the in-service back injury. Also, Dr. F. provided the opinion that it is likely the Veteran's current back disability is related to service. Although there is evidence that the Veteran sustained a work-related back injury in April 1978, the evidence is at least in equipoise that there was ongoing back symptomatology before the Veteran's April 1978 injury, and there is probative medical evidence that a post-service back disability is related to the initial in-service back injury. As there is evidence that the Veteran sustained a back injury in service, competent and credible lay evidence of recurrent back symptomatology from the in-service injury to the present, and evidence of a nexus between the present disability and in-service injury, entitlement to service connection is warranted. 

Therefore, based on a careful review of the entire record, the Board finds that the evidence is in equipoise as to whether the low back disorder, characterized as L1-S1 disc space disease with facet joint hypertrophy and bilateral neuroforaminal narrowing, is as likely as not is due to the Veteran's in-service back injury. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). In resolving all reasonable doubt in the Veteran's favor, service connection for L1-S1 disc space disease with facet joint hypertrophy and bilateral neuroforaminal narrowing is granted.

V. Tinnitus

The Veteran contends that he has tinnitus due to noise exposure during service. A review of the service treatment records shows no complaints of tinnitus. The Veteran did not indicate any ear trouble upon separation from service.

In June 2008, the Veteran underwent an audiological consult. The audiologist noted that the Veteran had a significant history of military and recreational noise exposure. The Veteran's chief complaint was tinnitus.

In October 2012, the Veteran underwent a VA audiological examination. The Veteran reported that he had recurrent tinnitus. The Veteran stated that the presence of tinnitus occurred for the last 5 to 10 years with no cause was identified. The Veteran reported that the onset of his tinnitus started right after discharge from service. The examiner noted that the Veteran had noise exposure from aircraft engines and weapons qualifications. The examiner opined the Veteran's tinnitus was less likely than not caused by or a result of military noise exposure. The examiner reasoned that there were no complaints of tinnitus in the Veteran's treatment records and that the Veteran did not report tinnitus at hearing test in 1973 after active duty service. 

The Veteran testified at a Board hearing in June 2017. The Veteran stated he had constant ringing in his ears. The Veteran stated that he believed his tinnitus had always been present. The Veteran clarified that he believed his tinnitus had been present since service. 

Initially, the Board finds that the Veteran had hazardous noise exposure in-service. Both the June 2007 audiologist and the October 2012 examiner confirm that the Veteran was exposed to hazardous noise while in service. As a result, the question that remains before the Board is whether the Veteran's tinnitus was caused or worsened by his military service.

The Board finds that the competent and credible evidence is in equipoise as to whether the Veteran's tinnitus began upon leaving service, has been recurrent since then, and still exists. The Board finds that the Veteran's statements regarding the noise exposure in service and experiencing tinnitus symptoms upon leaving service to be competent and credible. The Veteran is competent to testify as to observable symptoms such a ringing in the ears. See Charles v. Principi, 16 Vet. App. 370 (2002) (the Court has specifically held that tinnitus is a type of disorder associated with symptoms capable of lay observation.). The Board finds the Veteran's statements to be sufficient proof of this in-service injury and recurrent symptoms. The Veteran's lay statements are found to be credible and are confirmed by the circumstances of his service. 

Therefore, based on a careful review of the entire record, the Board finds that the evidence is in equipoise as to whether the current tinnitus as likely as not is due to the Veteran's exposure to noise in active service and as to whether the tinnitus began during active service. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). In resolving all reasonable doubt in the Veteran's favor, service connection for tinnitus is granted.


ORDER

New and material evidence having been received, the claim of entitlement to service connection for a low back disability is reopened; and service connection for L1-S1 disc space disease with facet joint hypertrophy and bilateral neuroforaminal narrowing is granted.

Service connection for tinnitus is granted.
REMAND

Unfortunately, a remand is required for the remaining issue on appeal. Although the Board sincerely regrets the additional delay, it is necessary to ensure the Veteran is given every possible consideration. 

The Veteran claims that his hearing loss is related to service. In August 2008, the Veteran filed a notice of disagreement (NOD). The Veteran stated that he underwent a puretone threshold and word discrimination test at a VA hospital. In June 2008, the record indicates that the Veteran had a VA audiological consultation. The consultation report does not include the any results from either a word discrimination test or a puretone threshold test. The consultation report notes that there is an addendum to the report. Further, in February 2013, the Veteran stated he had a hearing examination sometime in 2011, before his VA hearing examination in October 2012. The record does not contain any audiological examination in 2011. It appears that the Veteran's VA treatment records are not complete. Therefore, a remand is required to obtain any of the Veteran's VA treatment records.

Accordingly, the case is REMANDED for the following action:

1. Obtain all the Veteran's VA treatment records, to include any audiological examination reports on the Veteran's hearing.

2. Thereafter, and after undertaking any additional development deemed necessary, readjudicate the issue on appeal. If the benefit sought on appeal remains denied, the Veteran and his representative should be provided with a Supplemental Statement of the Case and be afforded reasonable opportunity to respond. The case should then be returned to the Board for further appellate review, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs