Citation Nr: 1826242 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 14-17 758 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to service connection for a left knee disability, to include as secondary to a service-connected right knee disability. 

2. Entitlement to an initial rating higher than 10 percent for a right knee disability. 


REPRESENTATION

Veteran represented by: Jan Dils, Attorney


WITNESS AT HEARING ON APPEAL

The Veteran




ATTORNEY FOR THE BOARD

S. D. Regan, Counsel


INTRODUCTION

The Veteran served on active duty in the Navy from July 1980 to October 2000. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of May 2012 and October 2013 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. The May 2012 RO decision granted service connection and a 10 percent rating for a right knee disability (a right knee injury, status post-surgical repair with degenerative joint disease), effective December 23, 2011. By this decision, the RO also denied service connection for a sleep disorder, to include sleep apnea (listed as chronic sleep deprivation). 

The October 2013 RO decision denied service connection for a left knee disability (listed a left knee condition), to include as secondary to a service-connected right knee disability. 

In December 2016, the Veteran appeared at a Board videoconference hearing before the undersigned Veterans Law Judge. 

In February 2017, the Board remanded the issues of entitlement to service connection for a sleep disorder, to include sleep apnea; entitlement to service connection for a left knee disability, to include as secondary to a service-connected right knee disability; and entitlement to an initial rating higher than 10 percent for a right knee disability, for further development. 

An October 2017 RO decision granted service connection and a 30 percent rating for an insomnia disorder, effective December 23, 2011. Therefore, the issue of entitlement to service connection for a sleep disorder, to include sleep apnea, is no longer on appeal. 

An April 2018 RO decision assigned a temporary total rating (38 C.F.R. § 4.30) based on convalescence for the Veteran's service-connected right knee disability for the period from January 31, 2018, to March 31, 2018. The RO assigned a 10 percent rating for the period since April 1, 2018.

The issues have been recharacterized to comport with the evidence of record.

The issues of entitlement to an initial rating higher than 10 percent for a right knee disability is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

A left knee disability, diagnosed as degenerative arthritis, had its onset in service, and/or was caused by a service-connected right knee disability. 


CONCLUSION OF LAW

The criteria for service connection for a left knee disability, diagnosed as degenerative arthritis, have been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 1154(a), 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2017). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Hickson v. West, 12 Vet. App. 247, 253 (1999); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table). 

The term "active military, naval, or air service" includes active duty, any period of active duty for training during which the individual was disabled or died from a disease or injury incurred in or aggravated in the line of duty, and any period of inactive duty training during which the individual was disabled or died from an injury incurred in or aggravated in the line of duty. 38 U.S.C.A. § 101 (24). 

Determinations as to service connection will be based on review of the entire evidence of record, to include all pertinent medical and lay evidence, with due consideration to VA's policy to administer the law under a broad and liberal interpretation consistent with the facts in each individual case. 38 U.S.C.A. § 1154(a); 38 C.F.R. § 3.303(a). 

Secondary service connection may be granted for a disability that is proximately due to, the result of, or aggravated by an established service-connected disability. 38 C.F.R. § 3.310 (2015); see also Allen v. Brown, 7 Vet. App. 439 (1995). 

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d at 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board"). 

The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Indeed, in Jefferson v. Principi, 271 F.3d 1072 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit (Federal Circuit), citing its decision in Madden, recognized that that Board had inherent fact-finding ability. Id. at 1076; see also 38 U.S.C.A. § 7104(a) (West 2002). Moreover, the United States Court of Appeals for Veterans Claims (Court) has declared that in adjudicating a claim, the Board has the responsibility to weigh and assess the evidence. Bryan v. West, 13 Vet. App. 482, 488-89 (2000); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992). 

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996). 

In determining the probative value to be assigned to a medical opinion, the Board must consider three factors. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The initial inquiry in determining probative value is to assess whether a medical expert was fully informed of the pertinent factual premises (i.e., medical history) of the case. A review of the claims file is not required, since a medical professional can also become aware of the relevant medical history by having treated a Veteran for a long period of time or through a factually accurate medical history reported by a Veteran. See Id. at 303-04. The second inquiry involves consideration of whether the medical expert provided a fully articulated opinion. See Id. A medical opinion that is equivocal in nature or expressed in speculative language does not provide the degree of certainty required for medical nexus evidence. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The third and final factor in determining the probative value of an opinion involves consideration of whether the opinion is supported by a reasoned analysis. The most probative value of a medical opinion comes from its reasoning. Therefore, a medical opinion containing only data and conclusions is not entitled to any weight. In fact, a review of the claims file does not substitute for a lack of a reasoned analysis. See Nieves-Rodriguez, 22 Vet. App. at 304; see also Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A] medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions."). 

The Veteran is service-connected for a right knee disability (a right knee injury, status post-surgical repair with degenerative joint disease). He is also service-connected for a residual surgical scar of the right knee; an insomnia disorder; and for tinnitus. 

The Veteran contends that he has left knee disability that is related service, or, more specifically, that is related to his service-connected right knee disability. The Veteran reports that he had problems with his left knee during service, but that his left knee received little attention because his right knee was so bad. He also indicates that he believes his left knee problems are caused by gait and weight bearing problems as a result of his service-connected right knee disability. 

The service treatment records do not specifically show treatment for left knee problems. Such records do show treatment for right knee problems on multiple occasions. An October 1987 treatment entry notes that the Veteran reported two knee surgeries for a partial medial meniscectomy and an anterior cruciate ligament resection. The assessment was "left knee" pain with laxity status post a medial meniscectomy. The examiner referred to the Veteran's "left knee," but apparently meant his right knee. 

A November 1992 treatment entry notes that the Veteran complained of left thigh pain, which he described as an eight out of ten, with swelling from the left knee to the left thigh for three days. The assessment was an acute strain of the left quad. A subsequent November 1992 treatment entry indicates that the Veteran was seen for follow-up for an acute strain of the left quad. The assessment was an acute left quad strain. 

Post-service private treatment records show treatment for variously diagnosed left knee problems, including left knee pain; a left knee medial collateral ligament injury with some chondral compromise; left knee pain with mild arthritis; and osteoarthritis of the left knee. 

March 2012 and December 2013 VA knee and lower leg conditions examination reports essentially refer to the Veteran's service-connected right knee disability. 

A June 2015 VA knee and lower leg conditions examination report includes a notation that the Veteran's claims file was reviewed. The Veteran reported that he had problems with his left knee during service, but that his left knee received little attention because his right knee was so bad. The diagnosis was degenerative arthritis of the left knee. The examiner commented that it was less likely as not that the Veteran's current left knee condition was causally related to his service-connected right knee. The examiner stated that such a judgment would be mere speculation with no documentation. 

In an August 2015 addendum to the June 2015 VA knee and lower leg conditions examination report, the same examiner indicated that the Veteran's claims file was reviewed. The examiner maintained that it was less likely as not that the Veteran's current left knee condition was secondary to his service-connected right knee disability and the compensating by the left knee for the right knee. The examiner stated that medical literature supported his opinion. The examiner also reported that the Veteran's current left knee arthritis was degenerative, which did not spread from other sites, and that it was most likely from age and being overweight. 

A March 2016 statement from J. M. Dauphin, M.D., indicates that the Veteran had a right knee injury in the military and that he developed degenerative joint disease and underwent five reconstructive surgeries. Dr. Dauphin indicated that the Veteran's right knee remained unstable, that he was braced full time, and that he made occasional use of a cane. It was noted that over the years, the Veteran had thrown more weight on his left knee and that he began to develop pain in his left knee. Dr. Dauphin stated that the onset of the Veteran's left knee pain was about two years ago and that he had undergone physical therapy which had not been successful. It was noted that the Veteran's left knee ached and that it was braced full time. 

Dr. Dauphin commented that he thought it would be as likely as not that the Veteran's left knee complaints were secondary to his right knee instability. Dr. Dauphin indicated that his opinion was based on the fact that the Veteran's locomotion occurred through both legs and rotated through the lower back during ambulation and back down through the left knee. It was noted that the Veteran was having pain in the medial aspect of the left knee as a result of the instability of the left knee. Dr. Dauphin stated that the Veteran's gait was unbalanced and that one leg was shorter than the other, and that such would invariably cause bilateral symptoms. Dr. Dauphin maintained that, therefore, it was as likely as not that the complaints in the "right knee" were secondary to those in the "left knee." It was noted that no patient treating physician relationship existed between Dr. Dauphin and the Veteran and that the report could not be construed as a comprehensive physical for general health purposes. Dr. Dauphin indicated that the evaluation was conducted on the basis of the medical examination and on the review of records provided with the assumption that the material was true and correct. 

A June 2017 VA knee and lower leg conditions examination report includes a notation that the Veteran's claims file was reviewed. The Veteran reported that he had occasional pain in his left knee. He also apparently referred to moderate bilateral knee pain. 

The diagnosis was degenerative arthritis of the right knee. The examiner commented that it was less likely than not that the Veteran's left knee was proximately due to or the result of residuals of the right knee. The examiner stated that the examination was essentially normal and that the Veteran's degenerative joint disease was more likely due to a natural progression. The examiner also indicated that the Veteran's service treatment records do not reveal a chronic knee condition or injury serious enough to cause any long term effect. 

The examiner further reported that he respected Dr. Dauphin's opinion, but that the rationale was weak. The examiner maintained that there was no evidence to support aggravation beyond the natural progression of the left knee due to the right knee. 

The probative value of medical opinion evidence "is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches. . . . As is true with any piece of evidence, the credibility and weight to be attached to these opinions [are] within the province of the adjudicators . . ." Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). The determination of credibility is the province of the Board. It is not error for the Board to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons or bases. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

The Board observes that there are opinions of record from VA examiners and from Dr. Dauphin. 

The Board notes that the VA examiner, pursuant to the June 2015 VA knee and lower leg conditions examination report, and the August 2015 addendum, maintained that it was less likely as not that the Veteran's current left knee condition was secondary to his service-connected right knee disability and the compensating by the left knee for the right knee. The Board notes that the examiner did not address direct service connection in regard to the Veteran's claimed left knee disability. The examiner also did not address the Veteran's reports of left knee problems during service and since service. The Board observes that the Veteran is competent to report left knee problems during service and since service. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). The Board further notes that the examiner stated that the Veteran's current left knee arthritis was degenerative, which did not spread to other sites, and that it was most likely from age and being overweight. The Board notes, however, that the examiner did not provide much in the way of a rationale for his conclusion that the Veteran's degenerative joint disease of the left knee was the result of age and being overweight. The Board further observes that the VA examiner was also not able to review subsequent positive opinions from Dr. Dauphin. Therefore, the Board finds that the opinions provided by the examiner, pursuant to the June 2015 VA knee and lower leg conditions examination report, and the August 2015 addendum, are not very probative in this matter. 

The Board observes that the examiner, pursuant to the June 2017 VA knee and lower leg conditions examination report, did not specifically provide a diagnosis of a left knee disability. The Board notes, however, that in his opinions, the examiner did indicate that the Veteran had degenerative joint disease of the left knee. Additionally, the Board observes that although the examiner did not provide a specific opinion as to direct service-connection, he did indicate that examination of the Veteran's left knee was essentially normal; that the Veteran's degenerative joint disease was more likely due to natural progression; and that the Veteran's service treatment records do not reveal a chronic knee condition or injury serious enough to cause any long term effect. 

The Board also observes that the examiner maintained that that it was less likely than not that the Veteran's left knee was proximately due to or the result of residuals of the right knee. The examiner reported that he respected Dr. Dauphin's opinion, but that the rationale was weak. The examiner maintained that there was no evidence to support aggravation beyond the natural progression of the left knee due to the right knee. The Board notes that although the examiner indicated that the rationale for Dr. Dauphin's opinion was weak, the examiner's only rationale that the Veteran's left knee degenerative joint disease was not related to his service-connected right knee disability was that there was no evidence to support aggravation beyond the natural progression of the left knee due to the right knee. The Board further observes, in regard to direct service connection, that the examiner did not address the Veteran's reports of left knee problems during service and since service. See Davidson, 581 F.3d at 1313. Therefore, the Board finds that the examiner's opinions, pursuant to the June 2017 VA knee and lower leg conditions examination report, are also not very probative in this matter. 

The Board notes that March 2016 statement from Dr. Dauphin indicates that the Veteran had a right knee injury in the military and that he developed degenerative joint disease and underwent five reconstructive surgeries. Dr. Dauphin reported that the Veteran's right knee remained unstable, that he was braced full time, and that he made occasional use of a cane. Dr. Dauphin stated that over the years, the Veteran had thrown more weight on his left knee and that he began to develop pain in his left knee. Dr. Dauphin commented that he thought it would be as likely as not that the Veteran's left knee complaints were secondary to his right knee instability. Dr. Dauphin indicated that his opinion was based on the fact that the Veteran's locomotion occurred through both legs and rotated through the lower back during ambulation and back down through the left knee. Dr. Dauphin also stated that the Veteran was having pain in the medial aspect of the left knee as a result of the instability of the left knee; that his gait was unbalanced; that one leg was shorter than the other; and that such would invariably cause bilateral symptoms. Dr. Dauphin maintained that, therefore, it was as likely as not that the complaints in the "right knee" were secondary to those in the "left knee." 

The Board observes that although Dr. Dauphin stated that he reviewed the records provided, there is no indication that he reviewed the Veteran's entire claims file. Although claims file review is not necessary, the probative value of a medical opinion is based on its reasoning and its predicate in the record so that the opinion is fully informed. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). Additionally, Dr. Dauphin did not specifically provide current diagnoses of the Veteran's left knee disability. The Board notes, however, that Dr. Dauphin did provide a detailed rationale for his opinion that he thought it would be as likely as not that the Veteran's left knee complaints were secondary to his right knee instability. Further, the Board notes that although Dr. Dauphin maintained that, it was as likely as not that the complaints in the "right knee" were secondary to those in the "left knee", it is clear that he meant that the complaints in the Veteran's left knee were secondary to those in his right knee. As Dr. Dauphin provided a detailed rationale for his opinions and discussed the Veteran's medical history in some detail, the Board finds that his opinions are the most probative in this matter. See Wensch v. Principi, 15 Vet. App. 362 (2001). 

The Board observes that the Veteran's service treatment records do not specifically show treatment for left knee problems. The Board notes, however, that such records do show treatment for complaints of left thigh pain, with swelling from the left knee to the left thigh, with an assessment of an acute strain of the left quad. Additionally, the Veteran's service treatment records do show treatment for right knee problems on multiple occasions. 

The Board observes that a June 2015 VA knee and lower leg conditions examination report, with an August 2015 addendum, indicates a diagnosis of degenerative arthritis of the left knee. Also, the examiner, pursuant to a June 2017 VA examination report, indicated that the Veteran had degenerative joint disease of the left knee. Therefore, the Veteran is currently diagnosed with a left knee disability, diagnosed as degenerative arthritis (degenerative joint disease). Additionally, the Board finds The Board finds the Veteran's reports of left knee problems during and since service to be credible. See Jandreau v. Nicholson, 492 F.3d 1372 (2007) (holding that lay evidence can be competent and sufficient to establish a diagnosis of a condition when a lay person is competent to identify the medical condition, or reporting a contemporaneous medical diagnosis, or the lay testimony describing symptoms at the time supports a later diagnosis by a medical professional). Further, the Board notes that Dr. Dauphin, in the most probative opinions of record, specifically indicated that the Veteran's left knee complaints were secondary to his service-connected right knee disability. 

Therefore, based on the totality of the evidence, the Board finds that the Veteran's current left knee disability, diagnosed as degenerative arthritis, had its onset during his period of service, and/or were caused by his service-connected right knee disability. The evidence is at least in equipoise in this regard, and thus the Veteran is to be given the benefit of the doubt. Therefore, service connection for a left knee disability, diagnosed as degenerative arthritis, is warranted. See 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2017). 


ORDER

Service connection for a left knee disability, diagnosed as degenerative arthritis, is granted. 

REMAND

The remaining issue on appeal is entitlement to an initial rating higher than 10 percent for a right knee disability. 

This case was remanded in February 2017, partly to determine the extent and severity of his service-connected right knee disability. 

Pursuant to the February 2017 Board remand, the Veteran was afforded a VA knee and lower leg conditions examination in June 2017. The diagnosis was degenerative arthritis of the right knee. Since that time, the Board notes that the Veteran underwent surgery on his right knee. A January 2018 operative report from the Charlotte Hospital indicates that the Veteran underwent removal of hardware from his right knee. The postoperative diagnosis was painful hardware of the right knee. 

Additionally, a February 2018 report from OrthoCarolina indicates that the Veteran was seen for follow-up regarding the removal of hardware in his right knee. The examiner stated that, basically, the Veteran was seen for a two-stage procedure because he was going to need a knee replacement in the future. The assessment included aftercare following surgery. 

Further, the notes that the U.S Court of Appeals for Veteran's Claims (Court) has issued a recent decision in Sharp v. Shulkin, 29 Vet. App. 26 (2017) concerning the adequacy of VA orthopaedic examinations. The Court in Sharp, held that before a VA examiner opines that he or she cannot offer an opinion as to additional functional loss during flare-ups without resorting to speculation based on the fact that the examination was not performed during a flare, the examiner must "elicit relevant information as to the veteran's flares or ask him to describe the additional functional loss, if any, he suffered during flares and then estimate the veteran's functional loss due to flares based on all the evidence of record, including the veteran's lay information, or explain why she could not do so." In light of this decision, as the findings pursuant to the June 2017 VA knee and lower leg conditions examination report, are inadequate, and as the record clearly raises a question as to the current severity of the Veteran's service-connected right knee disability, the Board finds that a new VA examination should be provided. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); see also Snuffer, 10 Vet. App. at 400, 403. 

Accordingly, the case is REMANDED for the following: 

1. Ask the Veteran to identify all medical providers who have treated him for right knee problems since February 2018. After receiving this information and any necessary releases, obtain copies of the related medical records which are not already in the claims folder. Document any unsuccessful efforts to obtain the records, inform the Veteran of such, and advise him that he may obtain and submit those records himself. 

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed of the nature, extent, and severity of his service-connected right knee disability and the impact of that condition on his ability to work. The Veteran should be provided an appropriate amount of time to submit this lay evidence. 

3. Thereafter, schedule the Veteran for an appropriate VA examination to determine the extent and severity of his service-connected right knee disability. The claims file must be reviewed by the examiner. All indicated tests must be conducted, including x-ray, and all symptoms associated with the Veteran's service-connected right knee disability must be described in detail. Specifically, the examiner must conduct a thorough orthopedic examination of the Veteran's right knee disability and provide diagnoses of any pathology found. 

In examining the right knee, full range of motion testing must be performed where possible. The joints involved must be tested in both active and passive motion, in weight-bearing and non-weight-bearing and, if possible, with range of motion measurements of the opposite undamaged joints. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, the examiner should clearly explain why that is so. The examiner should describe any pain, weakened movement, excess fatigability, instability of motion, and incoordination that is present. The examiner must also state whether the examination is taking place during a period of flare-ups. If not, the examiner must ask the Veteran to describe the flare-ups he experiences, including the frequency, duration, characteristics, precipitating and alleviating factors, severity and/or extent of functional impairment he experiences during a flare-up of symptoms and/or after repeated use over time. 

Based on the Veteran's lay statements and the other evidence of record, the examiner should provide an opinion estimating any additional degrees of limited motion caused by functional loss during a flare-up or after repeated use over time. If the examiner cannot estimate the degrees of additional range of motion loss during flare-ups or after repetitive use without resorting to speculation, the examiner should state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e. no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e. additional facts are required, or the examiner does not have the needed knowledge or training). 

4. Then readjudicate the issue on appeal. If the benefit sought remains denied, issue a supplemental statement of the case and return the case to the Board. 

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).





______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs